DUCKER, JUDGE:
The claimant, Sylvia Miller, Administratrix of the Estate of Helen Louise Miller, deceased, seeks damages in the original amount of $110,000.00, later amended to $10,000.00 limit of the amount allowed by law at the time of act complained of, against the West Virginia Division of Correction existing under the authority of the Commissioner of Public Institutions of the State of West Virginia, on account of the alleged murder of Helen Louise Miller, an infant nine years of age, on .the 27th day of December, 1967, by one Charles Gratton Plantz, a parolee from the West Virginia Penitentiary.
The more important facts disclosed from the evidence are as hereinafter enumerated. Charles G. Plantz, according to a report made to the West Virginia Board of Probation and Parole on December 26, 1963, was born on May 19, 1945 to Owen Plantz, age 45, and Betty Plantz, age 37, who were separated in 1945, and from 1955 Plantz was boarded out in private homes with little success in education. He was a ward of the Welfare Department from 1955-1960, placed in foster homes in the Charleston area, twice committed to Pruntytown, once to Forestry Camp, and Spencer State Hospital, and he escaped from all three institutions and was returned. From 1956 to March 1963, he was repeatedly guilty of breaking and entering and of larceny in one form or *63 another, which resulted in his conviction and confinement in the several institutions. From this record the subject was considered the product of a broken home and a deserting father, and due to his misfortunes he became a misplaced person. On March 2, 1963, Plantz was sentenced to serve one to ten years in the State penitentiary for breaking and entering, and he immediately began serving his term which, with credit for good behaviour, would have terminated in April, 1968. On January 25, 1967, Plantz was released on parole from the penitentiary. On April 24, 1967, Bob E. Willis, Probation and Parole Officer, made a Parole Violation Report on Plantz to John W. Mastín, Deputy Director of the Division of Corrections, in which he listed four violations by Plantz of his parole and suggested that Plantz’s parole be revoked, saying the “subject was not considered mentally ill but he doesn’t have the ability to live under the simplest form of regulations” and that subject “be returned to an ^outline’ institution as a trusty.” This report had at its bottom a notation, “No! See about Voc. Rehab. Program and await grand jury action. S”. This notation was made by Charles Robert Sarver, then Director of the Division of Corrections. The parole violations cited by Willis were (1) for associating with persons with criminal record or bad reputation, (2) drinking intoxicating beverages, beer, (3) driving a car without operator’s license, and (4) being arrested for auto larceny. The first three of these were considered by the state as technical violations 'and the fourth as a felony violation. For the fourth violation Plantz was arrested on April 11, 1967 and incarcerated in the Kanawha County jail. Two terms of grand jury action passed and on August 31, 1967, Parole Officer Willis reported to John W. Mastín, Deputy Director, that Plantz had not been indicted and that a motion of Plantz’s attorney for Plantz’s release had not been opposed by Prosecuting Attorney Spencer and that the Prosecuting Attorney did not have any objection to releasing Plantz from jail, and that he (Willis) considering the time Plantz had already spent in jail recommended that the Parole Board withdraw their “hold” on subject until he was indicted for the alleged offense, to which recommendation Director Sarver agreed, whereupon Plantz was released from jail.
*64 Sarver testified that the first three technical parole violations were not considered sufficient to revoke Plantz’s parole and that without a conviction of Plantz on the alleged felony violation, Plantz could not be considered guilty or subject to revocation on that alleged violation. So while free on his original parole Plantz committed the alleged murder of Helen Louise Miller, and this claim is based on the theory that the state has been negligent in not revoking Plantz’s parole and not returning him to the penitentiary or other custody which would have confined him and would not have allowed him to have been free and able to commit the alleged murder in question, and that legally such negligence was the cause of the death of Helen Louise Miller, to which claim the state responds by denying there was 'any negligence and that its action or inaction in not revoking Plantz parole was not in any legal sense the proximate or any cause of the alleged murder committed by Plantz. So the issues in this matter are, first, whether there was actionable negligence on the part of the state officers, and, secondly, whether if there was negligence it was the proximate cause of the tragedy.
Considerable evidence was introduced by the claimant showing the history of Plantz from the time he was eleven years old until he was sent to the penitentiary in 1963, most of which showed he was an incorrigible youth, the result of a broken home with no disciplined course of conduct or restraint, and after many arrests mostly for crimes involving theft in one form or another resulting eventually in his conviction and incarceration in the penitentiary in 1963 for a one to ten year term. In some reports it was stated he was accused of being a homosexual, but we find no positive proof of such allegations, and even if true violence can not be inferred from such a fact. In November, 1963, Bob E. Willis, Probation and Parole Officer, recommended to the Parole Board that Plantz serve eighteen months before being considered for parole. Plantz, who sometime after 1963 served time in the Medium Security Prison at Huttonsville, was returned to the penitentiary in Moundsville in May, 1966 as being totally undesirable for the Huttonsville institution. Two exhibits filed by the respondent show Plantz had excellent general conduct records in the penitentiary for the two months period covered by such *65 records. Plantz’s application for parole in January, 1967 was approved, Robert E. Kuhn, Chairman of the Parole Board having participated in the decision granting the parole. In view of the action of the Board in this matter, it seems reasonable to conclude that all the history of Plantz prior to his incarceration in 1963 has been to a large degree overcome by Plantz’s record being good enough to obtain his release on parole in January, 1967. Of course, it is argued that all the history of Plantz shows that he should not have been released on parole and that once released his parole should have been revoked. If there had beeen proof that Plantz had violent tendencies which in the foreseeable future could result in murderous conduct on the part of the parolee, then such argument would be more tenable, but we see nothing in the evidence in this case which would justify such a conclusion. The Parole Board exercised its discretion and judgment in granting the parole and we see no reason in this case to imply that there was any abuse in the exercise of that discretion.
The foregoing analysis brings us to the question of the parole not being revoked on the recommendation of parole officer Willis. As has been stated, the report of Willis specified four parole violations by Plantz, three so-called technical and one felony. There seems to be no contradiction in the evidence that the felony violation was the only one in which parole revocation was always considered mandatory under the Parole Board’s regulations or procedure. Claimant lays great stress on the procedure followed in case by the Department of Corrections, particularly its Director Sarver. There is no dispute as to the fact that the matter of Plantz’s parole revocation was never presented to or heard by the Parole Board. Nor is it disputed that Parole Officer Willis and Director Sarver handled the practically entire matter instead of there being a hearing and decision by the Parole Board. This now presents the question of negligence.
Parole Officer Willis in 1964 recommended that Plantz should serve eighteen months before being granted a parole and in April, 1967 made a report to Deputy Director John W. Mastin citing the four violations by Plantz and recommending that Plantz be returned to an outline (outlying) institution, on which later report Director Sarver penned the words “No! *66 See about V'oc. Rehab, program and await grand jury action.” The latter notation was apparently made after Plantz was placed in the Kanawha County jail pending proceedings on the charge of the auto theft. Willis, in his report of August 31, 1967, stated that Plantz had been in jail since April 11, 1967, without action on the charge and recommended that the Parole Board withdraw its “hold” on the subject until he is indicted. Sarver stated that he considered the period of time Plantz spent in jail as sufficient punishment for the technical violations suggested by Willis and then ordered the withdrawal of the “hold” order and Plantz was released. Apparently no further proceedings were had on the auto theft charge. On November 22, 1967, Willis gave Plantz permission to purchase and operate a motor vehicle for general purposes. Sarver testified that as there was no conviction or apparent intention to indict Plantz on the auto theft, he could not assume Plantz guilty, and all that then remained on the recommendation to revoke the parole were the three technical charges. Evidently Willis thought the technical charges were not sufficient to revoke when he several months later gave Plantz the privilege of buying and operating a motor vehicle. There is no evidence showing any parole violations between the August, 1967 report and the January, 1968 alleged murder. Claimant contends that the failure of Sarver in not having the Parole Board meet and decide the question of revocation of Plantz’s parole constitutes actionable negligence.
Sarver testified that his duties involved supervision of approximately twelve hundred parolees a year, that it was his duty to consider in each instance whether a recommendation of revocation should be submitted to the Parole Board, and that in this instance he did not consider the violation charges sufficient for consideration by the Board. The Director’s position is one of discretionary powers and we have not been shown and we do not find any requirement that either his or all recommendations of his subordinate officers have to be submitted to the Board for hearing and decision. Boards such as the Parole Board are necessarily dependent upon the officers of the state for their services both administrative and discretionary. Sarver recommended and directed the parole officer to see if !a vocational rehabilitation program could be provided *67 for Plante which, to us, in view of the facts and of Plante’s history, seems reasonable, and certainly wise and worth a try. Rehabilitation, if possible, of a person who does not have violent tendencies is today a most highly recommended procedure for dealing with persons of Plante's type. We are of the opinion that Sarver acted within his ¡authorized authority and that the evidence does not warrant a finding that he was either negligent or guilty of abuse in the exercise of his discretion.
If, however, we should have concluded that Director Sarver was guilty of negligence, then the question is whether such negligence was the proximate cause of the death of Helen Louise Miller. The respondent has cited numerous cases of our Supreme Court holding that our law is abundantly clear to the effect that negligence, no matter of what it consists, cannot create a cause of action unless it is the proximate cause of the injury complained ¡of, and that negligence to be actionable must be such as might have been reasonably expected to produce an injury, and that the cause of an injury must be the last negligent act contributing thereto, without which such injury would not have resulted. McCoy v. Cohen, 149 W.Va. 197, 140 S.E.2d 427, Griffith v. Wood, 150 W.Va. 678, 149 S.E.2d 205, 13 Michie’s Jurisprudence, Negligence Sec. 22, at page 531, and cases cited. The recent case of John L. Creamer, Adm. v. Department of Mental Health, Case No. D-40 in this court, is analogous to this case and supports this same in principle.
We are of the opinion, considering all the facts, very few of which, if any, are in dispute, that the failure of the Director of the Division of Corrections and any failure on the part of the Parole Board to revoke Plantz’s parole and to allow him to remain free on parole were not the proximate cause of the death of Helen Louise Miller. To say it must be anticipated by the authorities that a parolee who has shown no violent tendencies is or will become a potential murderer and a menace to society is not, in our opinion, reasonable. The matter of reasonableness in such a matter is one of discretion and there must be a clear case of abuse of discretion to warrant a decision of proximate cause of subsequent events.
Of course, it is indeed unfortunate when anyone is murdered, and sympathy for those affected is natural, but to say that *68 the action or the inaction of the officers of the state was the cause, much less the proximate cause, of the murder, is neither reasonable nor factual. While the public is entitled to the utmost protection from the criminal element of its society, it cannot restrain the freedom of individuals who are legally free and whose reputations do not show violent tendencies. Such a claim could be made when anyone being charged with a crime is free on bail. The state cannot control or be responsible for the illegal acts of its citizens, and it can only act according to the reasonable discretion of its officers and it should not be held liable for injuries or damages which are caused by an act which is not the foreseeable proximate cause of such injuries or damages. This court is not established to make awards on any sympathy basis, but only to hear and determine the question of legal liability as though there was no constitutional immunity to the state, and unless a claim is such as would be valid against one other than the state, we must deny relief.
For the reasons herein stated, we are of the opinion to, and do disallow the claim of the claimant in this case.
Claim Disallowed.